UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | | |
| v. | ) | Cause Nos. | 1:22-CR-24-HAB |
| | ) | | 1:24-CV-400-HAB |
| ALONZO HANEY | ) | | |

**OPINION AND ORDER**

Defendant challenges his sentence under 28 U.S.C. § 2255. (ECF No. 68). He claims that his counsel, Stanley Campbell, rendered constitutionally ineffective assistance of counsel. That motion is now fully briefed (ECF Nos. 71, 74) and ready for ruling.

**I.   Factual and Procedural History**

In March 2022, Defendant got into a verbal altercation with his wife, Marissa, over a suspected affair. The altercation turned physical, with Defendant battering Marissa. While Marissa initially told officers that Defendant pointed a gun at her during the altercation, she later recanted that testimony. For sentencing, the Court accepted Defendant's version that he grabbed the gun after the altercation and before leaving the marital residence.

The next day, Defendant returned to the marital residence with the firearm. He told Marissa to get into his car, telling her that they would visit the suspected affair partner at the partner's jobsite. Marissa felt that she had no choice but to go with Defendant because he was armed.

Defendant was stopped by a Fort Wayne Police officer shortly after leaving the residence. During the stop, officers located a pistol on the passenger side of the vehicle. Marissa told officers that Defendant had given her the gun when the stop was initiated.

Defendant's possession of a firearm was a problem because he had to prior felony convictions. The first was a 2016 conviction for Criminal Recklessness, a Level 5 felony. The

second was a 2019 conviction for being a Felon Carrying a Handgun, also a Level 5 felony. Both were punishable by a term of imprisonment exceeding one year.

In April 2022, Defendant was indicted on a single count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He entered into a written plea agreement in October of that year. (ECF No. 32). In that agreement, Defendant pled guilty to the sole count of the indictment. (*Id*. at 4). Defendant further waived his right to appeal or to challenge his sentence on any basis other than ineffective assistance of counsel ("IAC"). (*Id*. at 5). In return, the Government agreed to recommend the minimum of the applicable guideline range. (*Id*.).

Defendant appeared for a change of plea hearing before Magistrate Judge Susan Collins on October 25, 2022. At that hearing, Judge Collins confirmed that Defendant understood the terms noted above. Judge Collins and Defendant also had the following discussion regarding the application of the sentencing guidelines:

> THE COURT: Okay. All right. Sir, the Court is going to determine your sentence using a combination of advisory sentencing guidelines, possible authorized variances from those guidelines, as well as other statutory sentencing factors. Now, have you and Mr. Campbell talked about how these advisory sentencing guidelines might apply in your case?
>
> THE DEFENDANT: Yes, we have, Your Honor.
>
> THE COURT: Okay. Do you understand, though, the Court is not going to be able to determine the advisory guideline sentence for your case until a presentence investigation report has been completed, and you and the government have an opportunity to get your hands on that report and challenge the facts contained within that report, as well as the application of the guidelines that are recommended by your Probation Officer?
>
> THE DEFENDANT: Yes, I do, Your Honor.
>
> THE COURT: And do you understand that even after that advisory guideline sentence has been determined, the Court's examination of other statutory sentencing factors under Title 18, United States Code Section 3553(a) may result in a sentence that is greater than or lesser than the advisory guideline sentence?

THE DEFENDANT: Yes, I do, Your Honor.

(ECF No. 64 at 19-20). Judge Collins found that the plea was knowing and voluntary and recommended that the plea be accepted. Judge Collins further ordered the preparation of a presentence investigation report.

A draft presentence investigation report was prepared in December 2022. The probation officer assessed a total offense level of 15. That was based on a base offense level of 14, a four-level enhancement for possessing the firearm in connection with other felony offenses, and reductions of three levels for acceptance of responsibility. The probation officer further found that Defendant had a criminal history score of five, resulting in a criminal history category of III. This resulted in a guideline range of 24-30 months' imprisonment.

Defendant objected to the draft report. (ECF No. 45). He argued that the felonies identified in support of the four-level enhancement did not apply. But he acknowledged that a different felony, criminal recklessness, did apply, and conceded that the four-level enhancement was appropriate. At a status conference, the Court sustained Defendant's objection that he used the firearm in relation to the domestic battery. But the Court overruled the objection to the four-level enhancement. As a result, the guideline range remained the same.

Defendant was sentenced in February 2023. Before hearing argument from the parties, the Court identified factors it was considering in reaching an appropriate sentence. This included Defendant's criminal history, which involved two prior firearms offenses, the offense conduct, specifically Defendant's intent to confront an individual with a firearm, and the domestic battery, which the Court stated went to Defendant's history and characteristics. The Court also identified mitigators, including Defendant's childhood, his educational and vocational efforts, and his relationship with his children.

The Government gave a half-hearted argument in support of the plea agreement. It essentially admitted that it over-estimated the guideline range, noting that the final guideline range "seems to be out of whack." And although the Government recognized Defendant's criminal history and the nature of the offense, it stood by its plea agreement and asked for the low end of the guideline range.

Attorney Campbell made many of the same arguments Defendant now advances. He argued that Defendant's criminal history was already figured into the guideline range. He also noted that Defendant never confronted anyone with the firearm, and that any suggestion that he would confront the affair partner was speculation. He highlighted Defendant's tough upbringing and his efforts at rehabilitation while incarcerated.

After hearing from Defendant, the Court announced the sentence. For the 18 U.S.C. § 3553(a) factors, the Court identified the following factors:

> In mitigation, the Court considered the lack of guidance from the defendant's father, the fact that the defendant obtained his GED, his prior employment history the support system available to him from his family and his mental health struggles.
>
> In aggravation, the Court considered the defendant's criminal history, which we've discussed a bit throughout the hearing today. His criminal history started at age 14, and more importantly includes three prior instances involving firearms, most notably a 2016 charge, which involved the defendant firing 16 rounds into an occupied vehicle.
>
> The Court also, as we discussed again, considered the offense conduct in this case, which involved the – which involved a domestic battery, albeit separate from the possession of the firearm in this case, and then involved the defendant going on his way to confront the individual that he thought was at least planning to cheat with his wife.
>
> So I find those to be extraordinarily aggravating circumstances in this case.

(ECF No. 63 at 37-38). The Court sentenced Defendant to a term of 96 months' imprisonment and two years' supervised release.

Defendant timely appealed his sentence. That appeal was dismissed on motion by Defendant. He then timely filed this habeas petition.

## II.   Legal Discussion

### A.   *28 U.S.C. § 2255*

Relief under 28 U.S.C. § 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). To proceed on a motion under § 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence exceeded the maximum authorized by law or is otherwise subject to collateral attack. *Id.* A § 2255 motion is neither a substitute for nor a recapitulation of a direct appeal. *Id*. As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992). Additionally, aside from showing "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a § 2255 movant may alternatively pursue such errors after proving that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008). This general rule does not apply to claims of ineffective assistance of counsel, which may be brought via § 2255 even if not pursued during a direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

B.   *IAC Standard*

To make out a successful ineffective assistance of counsel claim, Defendant must show that: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance so prejudiced his defense that it deprived him of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 688-94 (1984).

> With regard to the performance prong, [the] defendant must direct us to the specific acts or omissions which form the basis of his claim. The court must then determine whether, in light of all the circumstances, the alleged acts or omissions were outside the wide range of professionally competent assistance.

*United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). Moreover, claims that an attorney was ineffective necessarily involve inquiries into an attorney's trial strategies, which in turn requires facts which usually are not contained in the trial record. Thus, many trial determinations, like so many "other decisions that an attorney must make in the course of representation[, are] a matter of professional judgment." *United States v. Berkowitz*, 927 F.2d 1376, 1382 (7th Cir. 1991). Thus, the Court must resist a natural temptation to become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

> It is not our task to call the plays as we think they should have been called. On the contrary, we must seek to evaluate the conduct from counsel's perspective at the time, and must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.

*United States v. Ashimi*, 932 F.2d 643, 648 (7th Cir. 1991) (citations and quotations omitted). Should the petitioner satisfy the performance prong, he must then fulfill the prejudice prong by demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *United States v. Starnes*, 14 F.3d 1207, 1209-10 (7th Cir. 1994). "In making the determination whether the specified errors resulted in the

required prejudice, a court should presume . . . that the judge or jury acted according to law." *Strickland*, 466 U.S. at 694.

C.    ***Attorney Campbell was not Ineffective for Failing to Object to the Above-Guidelines Sentence***

Defendant first argues that Attorney Campbell was ineffective for failing to object to the Court's above-guidelines sentence. As Defendant sees it, his plea was a Rule 11(c) plea that bound the Court to sentence him within the guidelines. He claims that neither "the Government, his Attorney, the Plea Agreement, nor this Court at sentencing placed him on notice that the recommended sentencing range of 24 to 30 months that the government was recommending was just a starting point." (ECF No. 68 at 9).

Of course, that's all wrong. Starting with the plea agreement, it expressly stated that the Government's sentencing recommendation was "not binding upon the Court" and that, if the Court did not follow the recommendation, Defendant "would not be allowed to withdraw" his plea. (ECF No. 32 at 4-5). The plea agreement also told Defendant that the guidelines were "advisory only, and that the specific sentence to be imposed . . . will be determined by the judge." (*Id*. at 4). It's hard to see how the plea agreement could have been clearer.

But more damning to Defendant's argument are his statements at the plea hearing. There, Defendant stated, under oath, that he understood that application of the § 3553(a) factors could result in a sentence above the guideline range. So even before sentencing, Defendant was well-aware that the guidelines were only a starting point.

"Entry of a plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard. A defendant has no legal entitlement to benefit by contradicting himself under oath. Thus when the judge credits the defendant's statements in open court, the game is over." *United States v. Stewart*, 198 F.3d 984,

7

987 (7th Cir. 1999). Magistrate Judge Collins credited Defendant's statements in accepting his plea, and this Court did likewise when it adopted Magistrate Judge Collins' Report and Recommendation. (ECF No. 43). As the Seventh Circuit said, the game is over. Defendant will not be heard to feign ignorance as to the terms of his plea, and Attorney Campbell was not ineffective for failing to do so himself.

Defendant's second challenge to his sentence fares no better. There, he argues that Campbell should have objected to the Court's "double counting his criminal history." (ECF No. 68 at 10). In essence, he argues that his criminal history was already factored into his guideline range, so it should not have been used to aggravate the sentence further.

There are many problems with this argument. First, Attorney Campbell did make this argument at sentencing. He argued that Defendant's criminal history was already taken into consideration in the guideline range. True, his arguments failed, but Attorney Campbell's efforts were not Constitutionally ineffective "just because the defendant's arguments have been considered and rejected" by this Court. *Brown v. Caraway*, 719 F.3d 583, 597 (7th Cir. 2013). Rather, Attorney Campbell satisfied *Strickland*'s requirement by presenting "the best available defense, even if that defense is doomed." *Id*.

But more broadly, sentencing courts may consider the "*regularity* and *quality*" of a defendant's criminal history, not just the number of convictions, when deciding on a sentence. *United States v. Settles*, 43 F.4th 801, 807 (7th Cir. 2022) (original emphasis). This Court was not barred from weighing criminal history "differently than the Sentencing Commission." *United States v. Hayden*, 775 F.3d 847, 850 (7th Cir. 2014). Any claim that the Court erred in using Defendant's criminal history as an aggravator was meritless, and Attorney Campbell cannot be

8

found ineffective for failing to raise a meritless argument. *Warren v. Baenen*, 712 F.3d 1090, 1105-06 (7th Cir. 2013).

Defendant refines his argument somewhat on reply. He now argues that the Court departed too much, and without sufficient justification.

He's not wrong on the law. When a judge sentences a defendant outside the advisory Guidelines range, "he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance. . . .. [A] major departure should be supported by a more significant justification than a minor one." *Gall v. United States*, 552 U.S.38, 50 (2007); *United States v. Presbitero*, 569 F.3d 691, 707 (7th Cir. 2009). The judge must give a justification that explains and supports the magnitude of the variance. *United States v. Eubanks*, 593 F.3d 645, 656 (7th Cir. 2010).

But here, the Court did explain the magnitude of the variance. It noted his history of gun crimes, including discharging those firearms. It noted the circumstances of the offense and the related domestic battery. It called the aggravators "extraordinary." This is not a case where the Court failed to provide a justification that explained the departure, and Attorney Campbell cannot be ineffective for not lodging a meritless objection.

### III.    Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner

or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983). Because the Court finds that no reasonable jurist could conclude that Defendant is entitled to relief, no certificate of appealability will be issued.

**IV.    Conclusion**

For these reasons, Defendant's motion to vacate (ECF No. 68) is DENIED. No certificate of appealability will issue.

SO ORDERED on May 13, 2025.

                                          s/ *Holly A. Brady*
                                          CHIEF JUDGE HOLLY A. BRADY
                                          UNITED STATES DISTRICT COURT